**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kim L. Slusher,<br><br>        Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>        Defendant. | No. CV-20-02038-PHX-SPL<br><br>**ORDER** |

    Plaintiff Kim L. Slusher seeks judicial review of the denial of her application for disability insurance benefits under the Social Security Act, 42 U.S.C. § 405(g). Before the Court are Plaintiff's Opening Brief (Doc. 19), Defendant Commissioner of Social Security Administration's Answering Brief (Doc. 22), Plaintiff's Reply Brief (Doc. 26), and the Administrative Record (Doc. 16). Upon review, the Court reverses and remands the Administrative Law Judge's decision (AR[1] at 23–35).

**I.    BACKGROUND**

    On May 10, 2017, Plaintiff filed a Title II application for disability insurance benefits, alleging a period of disability beginning on November 1, 2012 (AR at 26). Her claim was initially denied on September 29, 2017, and again upon reconsideration on February 9, 2018. (*Id.*). Plaintiff testified at an administrative hearing on November 21, 2019 (AR at 58–77), after which the Administrative Law Judge ("ALJ") found Plaintiff

---

[1] Administrative Record (*see* Doc. 16).

was not disabled from November 1, 2012 through December 31, 2018 (AR at 23–35). On July 24, 2020, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the agency's final decision. (AR at 6).

The Court has reviewed the medical evidence in its entirety and will discuss the pertinent medical evidence in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following medically determinable impairments: degenerative disc disease and osteoporosis. (AR at 29). Ultimately, the ALJ concluded that Plaintiff "was not disabled under sections 216(i) and 223(d) of the Social Security Act through December 31, 2018, the date last insured." (AR at 34).

## II.     LEGAL STANDARD

A person is considered "disabled" for the purpose of receiving social security benefits if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Id*. To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id*. (citation omitted). Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

To determine whether a claimant is disabled for purposes of the Act, the ALJ

follows a five-step process. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520(a)). The claimant bears the burden of proof on the first four steps, and the burden shifts to the Commissioner at step five. *Id.* At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in the regulations.[2] § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ determines the claimant's residual functional capacity ("RFC"). §§ 404.1520(e), 416.920(e). At step four, the ALJ determines whether the claimant's RFC precludes her from performing her past relevant work. § 404.1520(a)(4)(iv). If so, the ALJ proceeds to the fifth and final step, where they determine whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

**III.   ANALYSIS**

Plaintiff argues that (1) the ALJ erred in finding her mental impairments were not severe at step two of the sequential evaluation (Doc. 19 at 7–9), and (2) the ALJ failed to provide valid reasons for discounting her subjective symptom testimony (*Id.* at 9–15). Plaintiff further argues the case should be remanded for a computation of benefits, rather than further proceedings. (*Id.* at 15–16). For the following reasons, the Court reverses the ALJ's decision and remands the case for further proceedings.

**A.   Step Two of the Sequential Evaluation**

As previously stated, at step two of the five-step sequential disability analysis, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). This "requires an assessment of the

---

[2] The impairments "listed in the regulations" are found in Appendix 1 to Subpart P of 20 C.F.R. Part 404.

functionally limiting effects of an [impairment or combination of impairments] on an individual's ability to do basic work." Social Security Ruling ("SSR") 96-3P, 1996 WL 374181, at *1 (July 2, 1996). The claimant's age, education, and work experience are not considered at step two; instead, the only question is whether the claimant's impairment or combination of impairments significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). "Basic work activities are 'abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing 20 C.F.R. § 404.1520(b)). The step-two severity determination is "a de minimis screening device to dispose of groundless claims." *Id.* An impairment is *not* considered severe "if it is merely a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quotation omitted).

Whenever the impairment at issue at step two is a *mental* impairment, the regulations require the use of a "special technique" to determine whether the impairment is severe. 20 C.F.R. § 404.1520a(a)). Under the special technique, the first step is to evaluate the claimant's "pertinent symptoms, signs, and laboratory findings to determine whether [he or she has] a medically determinable mental impairment(s)." § 404.1520a(b)(1). If so, the next step is to "rate the degree of functional limitation resulting from the impairment(s)." § 404.1520a(b)(2). The degree of functional limitation is rated based on "the extent to which [the claimant's] impairment(s) interferes with [his or her] ability to function independently, appropriately, effectively, and on a sustained basis." § 404.1520a(c)(2). The regulations provide four broad functional areas in which the degree of functional limitation is to be rated: (i) understand, remember, or apply information; (ii) interact with others; (iii) concentrate, persist, or maintain pace; and (iv) adapt or manage oneself. § 404.1520a(c)(3). The degree of limitation in each of the four functional areas is rated on a five-point scale: none, mild, moderate, marked, and extreme. § 404.1520a(c)(4). Under the regulations, if the degrees of limitation are rated as "none"

or "mild," the claimant's limitations are "generally" concluded to be non-severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." § 404.1520a(d)(1). An ALJ is required to incorporate this special technique into his or her written decision and to include a specific finding as to the degree of limitation in each of the four functional areas. § 404.1520a(e)(4).

Here, the ALJ found that Plaintiff had two severe impairments: degenerative disc disease and osteoporosis. (AR at 29). The ALJ found that Plaintiff's other impairments—irritable bowel syndrome, acid reflex, and adjustment disorder with depressed mood and anxiety—were non-severe.[3] (*Id.*). As to Plaintiff's mental impairments specifically, the ALJ found that the "anxiety and depression, considered singly and in combination, did not cause more than minimal limitation in [Plaintiff]'s ability to perform basic mental work activities." (AR at 30). The ALJ reasoned that Plaintiff's depression was "stable," her memory was "normal," her insight and judgment were "good," and that Plaintiff was "alert and oriented." (*Id.*). The ALJ also relied on the examination and medical opinion of Dr. Jessica Leclerc, whose findings the ALJ determined to be consistent with the medical evidence in the record. (AR at 31). Perhaps most importantly, the ALJ "considered the four broad areas of mental functioning" set out in the regulations and made a specific finding as to each area. (AR at 30). With respect to "understanding, remembering, or applying information," the ALJ found that Plaintiff had no limitation.[4] (*Id.*). The ALJ also found no

---

[3] Plaintiff does not contend that the ALJ erred in finding that her irritable bowel syndrome and acid reflex were non-severe. The only issue before this Court, then, is whether the ALJ erred in determining that Plaintiff's mental impairments were non-severe.

[4] To the extent Plaintiff argues that the ALJ overlooked evidence with respect to the first functional area (understanding, remembering, or applying information), the Court is unpersuaded. Plaintiff refers to her performance on the mini mental status examination ("MMSE") as evidence that her limitations in the first functional area are greater than the ALJ acknowledged. (Docs. 19 at 7 & 26 at 3). Specifically, Plaintiff points to her inability to copy a figure, her poor word recall (she responded "I forgot" when asked to recall three words), and her failure on the three-stage command (she was asked to take the paper in her right hand, fold it in half, and place it on the table; she incorrectly took the paper in her left hand). (Docs. 19 at 7 & 26 at 3; AR at 391).

This Court finds that the ALJ appropriately considered all aspects of the MMSE when he found that Plaintiff had "no limitation" in understanding, remembering, or applying information. The ALJ acknowledged Plaintiff's less-than-perfect MMSE score

limitations with respect to "interacting with others" and "adapting or managing oneself." (*Id.*). As to the third functional area—"concentrating, persisting, or maintaining pace"—the ALJ found that Plaintiff had a "mild" limitation. (*Id.*). The ALJ explained his findings for each functional area, citing to specific evidence from the record. (*Id.*). After analyzing Plaintiff's limitations, the ALJ concluded that Plaintiff's medically determinable mental impairments were non-severe because they caused no limitation in three of the functional areas and only mild limitations in the other. (AR at 31).

This Court finds that the ALJ did not err in determining that Plaintiff's mental impairments were non-severe because the ALJ expressly incorporated the special technique for evaluating mental impairments in accordance with the regulations. The ALJ made a finding—either "no limitation" or "mild limitation"—as to each of the four functional areas. And while this alone would probably have been sufficient, the ALJ went further and provided an explanation for each of the four findings. *See Hoopai v. Astrue*, 499 F.3d 1071, 1077–78 (9th Cir. 2007) (holding that it was sufficient for ALJ to simply make a specific finding in each of four areas and rejecting argument that ALJ was required to document considerations underlying those findings); *Keyser v. Comm'r of Soc. Sec. Admin.*, 648 F.3d 721, 726 (9th Cir. 2011) (holding ALJ erred by failing to make specific finding as to degree of limitation in any of four functional areas); *Burrell v. Astrue*, No. CV 11-00766-PHX-NVW, 2012 WL 1413310, at *8 (D. Ariz. Apr. 24, 2012) (finding no error where ALJ employed special technique in determining whether claimant's mental impairments were severe); *Hackleton v. Saul*, No. 19-CV-02242-WVG, 2021 WL 1102450, at *10 (S.D. Cal. Mar. 23, 2021) (rejecting argument that ALJ was required to do anything more than make a finding as to the four functional areas); *Sandoval v. Saul*,

---

(25/30) and that she was "unable to recall any of the three words." (AR at 30). Despite this, the ALJ found that there was enough other evidence for a finding that she had no limitation. (*Id.*). Even assuming the ALJ should have found *some* limitation—perhaps a "mild" limitation—due to Plaintiff's MMSE performance, it would not have changed the outcome because the ALJ still found no limitations in two of the functional areas and only a mild limitation in the other. (*Id.*). In other words, even assuming mild limitations existed in two of the four functional areas, this would not be enough under the regulations for a finding that Plaintiff's mental impairments were necessarily severe. *See* 20 C.F.R. § 404.1520a(d)(1) ("If we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe. . . .").

No. 19-CV-1477-WVG, 2020 WL 4347514, at * (S.D. Cal. July 28, 2020) ("The ALJ is not required to document the reasons underlying these findings or make any more specific findings regarding the claimant's functional limitations.").

Although the ALJ did not err in finding Plaintiff's mental impairments non-severe, the ALJ was still required to consider Plaintiff's mental impairments when determining Plaintiff's RFC between steps three and four. *See* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . . when we assess your residual functional capacity."); *see also Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017) ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' . . . The RFC therefore *should* be exactly the same regardless of whether certain impairments are considered 'severe' or not."). Here, Plaintiff asserts that the ALJ failed to consider her mental impairments during his RFC analysis. (Doc. 19 at 9). In response, Defendant contends just the opposite—that the ALJ properly considered and discussed Plaintiff's mental impairments while determining Plaintiff's RFC. (Doc. 22 at 7–8, 9).

This Court has previously found error where an ALJ failed to consider mild limitations identified at step two in her RFC analysis. *Solomon v. Cmm'r of Soc. Sec. Admin.*, 376 F.Supp.3d 1012, 1020–21 (D. Ariz. 2019). Like in this case, the ALJ in *Solomon* found at step two that the claimant's mental impairments were non-severe because the claimant had either no or mild limitations in each of the four broad functional areas. *Id.* at 1020. In determining the plaintiff's RFC, however, the ALJ gave "no indication" that she considered the claimant's "mild limitations in his social functioning, concentration, persistence, and pace." *Id.* at 1021. The *Solomon* Court found the omission "particularly notable"—and harmful—because the ALJ may have decided differently at steps four and five had she considered the claimant's limitations in concentration, persistence, and pace. *Id.*

Similarly, in *Michele M. v. Saul*, the United States District Court for the Southern

District of California found that the ALJ erred by not considering—or not clarifying whether she considered—the claimant's non-severe mental impairments when determining her RFC. No. 19-cv-00272-JLB, 2020 WL 1450442, at *7 (S.D. Cal. Mar. 25, 2020). In *Michele M.*, the ALJ found that the claimant had medically determinable mental impairments of depression, PTSD, and anxiety. *Id.* at *5. The ALJ considered the four broad functional areas, finding that the claimant had "(1) mild limitations in understanding, remembering, or applying information; (2) mild limitations in interacting with others; (3) mild limitations in her ability to concentrate, persist, or maintain pace; and (4) mild limitations in her ability to adapt or manage herself." *Id.* As a result, the ALJ found that the mental impairments were not severe. *Id.* Near the end of her step two discussion, ALJ acknowledged that

> [t]he limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing the various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, *the following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis*.[5]

*Id.* at *6 (emphasis added). The court found that, "[d]espite this acknowledgement, and despite [the ALJ's] recognition that in determining an individual's RFC, an ALJ must 'consider all of the claimant's impairments, including impairments that are not severe,'" the ALJ assigned Plaintiff an RFC without considering any of her mental restrictions. *Id.* The court recognized that "consideration of 'the limiting effects of all impairments' does not necessarily require the *inclusion* of every impairment into the final RFC if the record

---

[5] In the present case, the ALJ made this exact same acknowledgement (AR at 31) but—like the ALJ in *Michele M.*—failed to follow through on it by actually considering Plaintiff's non-severe mental restrictions in the RFC analysis.

- 8 -

indicates the non-severe impairment does not cause a significant limitation in the plaintiff's ability to work." *Id.* at *7 (citation and internal quotations omitted). However, the court nonetheless found error because it could not "discern definitively from the hearing decision whether the ALJ considered Plaintiff's non-severe mental impairments and any corresponding limitations before assigning Plaintiff an RFC without any mental restrictions." *Id.*

Here, the ALJ's RFC analysis fails to address how his assessment of Plaintiff's non-severe mental impairments factored into his RFC determination. As in *Michele M.*, the ALJ here made the same vague and conclusory assertion at step two that his subsequent RFC analysis "reflects the degree of limitation that [he] has found in the 'paragraph B' mental function analysis." (AR at 31). And—again, as in *Michele M.*—the ALJ here then failed to include any reference to Plaintiff's mental limitations in the RFC analysis. (AR at 31–34). The ALJ's RFC analysis begins with the general assertion that "[i]n making this finding, [the ALJ] has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (AR at 31). The RFC analysis also acknowledges that Plaintiff "reported difficulty . . . remembering information, completing tasks, concentrating, understanding information, and following instructions," alluding to some of the mental limitations the ALJ identified at step two. (AR at 32). Nothing else in the ALJ's RFC analysis can be construed as a consideration of Plaintiff's mild mental limitations in concentrating, persisting, or maintaining pace. Instead, the RFC analysis focuses first on Plaintiff's physical impairments and how they match up with the medical record, and second on the persuasiveness of three medical opinions from the record. (AR 32–34). While the ALJ may have very well considered Plaintiff's non-severe mental impairments in his RFC analysis, "this is merely speculative, as the ALJ does not provide this explanation [himself]." *Michele M.*, 2020 WL 1450442, at *8 (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) ("[A court] cannot substitute [its] conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions. Although the ALJ's

analysis need not be extensive, the ALJ must provide some reasoning in order for [the court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence.")).

As in *Solomon* and *Michele M.*, the ALJ here identified specific, non-severe mental limitations at step two and then erred by failing to consider—or at least making it clear that he considered—those limitations in his RFC determination. The Court finds this error to be harmful because the ALJ's conclusion that Plaintiff could perform light work may have been different had Plaintiff's limitations in concentration, persistence, and maintaining pace been considered in the determination. *See Dela Cruz v. Colvin*, No. CV 13-06286-DFM, 2014 WL 2865076, at *2–3 (C.D. Cal. June 24, 2014) (cited by *Solomon*) (remanding because ALJ failed to assess all of claimant's medically determinable impairments in RFC analysis); *Hutton v. Astrue*, 491 Fed. Appx. 850, 851 (9th Cir. 2012) (cited by *Michele M.*) ("Further, while the ALJ was free to reject [the claimant's] testimony as not credible, there was no reason for the ALJ to disregard his own finding that [the claimant's] non[-]severe PTSD caused some 'mild' limitations in the areas of concentration, persistence, or pace."); *Palafox v. Saul*, No. CV 19-1517 SS, 2020 WL 752153, at *5 (C.D. Cal. Jan. 10, 2020) (cited by *Michele M.*) ("Here, the ALJ found that Plaintiff had mild limitations in 'understanding, remembering, or applying information,' and in 'concentrating, persisting, or maintaining pace.' However, the ALJ gave no indication that he considered these limitations in determining Plaintiff's RFC.").

### B.     Subjective Symptom Testimony

Plaintiff argues that the ALJ erred in discounting Plaintiff's subjective symptom testimony. (Doc. 19 at 9–15). In evaluating a claimant's testimony, the ALJ is required to engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must decide whether the claimant has presented objective medical evidence of an impairment reasonably expected to produce some degree of the symptoms alleged. *Id.* If so, and there is no evidence of malingering, the ALJ can reject the testimony regarding the severity of the symptoms only by providing specific, clear, and convincing reasons for the

rejection. *Id.* Here, the ALJ recognized Plaintiff's reported symptoms as difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, remembering information, completing tasks, concentrating, understanding information, and following instructions. (AR at 32). Plaintiff also reported back and leg pain. (*Id.*). In the first step, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (*Id.*). However, at the second step, the ALJ concluded that Plaintiff's statements about the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (*Id.*).

The ALJ's decision to discount Plaintiff's symptom testimony was based on the following evidence: (i) Plaintiff received an epidural steroid injection which provided her with 80% relief of her leg pain in 2016; (ii) Plaintiff appeared pleasant, well nourished, and not in acute distress during two examinations in November and December 2017; (iii) Plaintiff reported she felt "good overall" during a November 2018 examination; and (iv) Plaintiff's gait was "good" at two examinations in September and December 2017. (AR at 32–33). The ALJ also noted that Plaintiff originally declined back surgery after she was declared a candidate for the procedure in 2017. (AR at 32).

The primary issue with the ALJ's reasoning is that it fails to specifically identify the testimony that this evidence undermines. Instead, the ALJ merely makes the broad and conclusory assertion that Plaintiff's statements "about the intensity, persistence, and limiting effects of her symptoms" were inconsistent with this evidence. (*Id.*). The Ninth Circuit has held that "an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001); *see also Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (an ALJ's findings "must be sufficiently specific to allow

a reviewing court to conclude the [ALJ] rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit [the] claimant's testimony."); *Smolen*, 80 F.3d at 1281 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."). Here, the ALJ fails to meaningfully explain what portion of Plaintiff's symptom testimony is undermined by the above evidence, let alone how that evidence actually contradicts or undermines Plaintiff's reported symptoms. The ALJ's reasoning—which only recites certain medical evidence supporting the ALJ's conclusion—is simply not specific enough to allow this Court to conclude that the ALJ's discounting of Plaintiff's symptom testimony was based on permissible grounds rather than upon arbitrary reasoning.

Moreover, even if the Court were to read between the lines of the ALJ's decision, it is unclear how the above evidence is sufficient to discount Plaintiff's symptom testimony. The epidural injection provided Plaintiff with 80% relief of her leg pain over a few-week span in 2016, (AR at 611), but it is unclear how this fact alone undermines Plaintiff's other symptoms such as back pain and her difficulties in—among other things—lifting, squatting, standing, walking, remembering information, completing tasks, and understanding information. In fact, during the same September 2017 examination in which it was noted that the 2016 epidural injection relieved her leg pain, Plaintiff reported that she was still suffering from chronic back pain, that the pain was aggravated by extended periods of sitting, standing, walking, certain back movements, lifting, and carrying, and that the injections were "less and less effective" in relieving her low back pain. (AR at 607).

Similarly, the fact that Plaintiff appeared pleasant, well nourished, with a good gait, and not in acute distress during certain examinations in late 2017 does not necessarily discount any of Plaintiff's testimony about the intensity, persistence, and limiting effects of her symptoms, particularly those symptoms and effects related to her chronic conditions. *See Mitchell v. Saul*, No. 2:18-cv-01501-GMN-WGC, 2020 WL 1017907, at \*7 (D. Nev. Feb. 13, 2020) ("Moreover, the court agrees with Plaintiff that notations that Plaintiff was

healthy 'appearing' and in no 'acute' distress do not distract from the findings regarding Plaintiff's chronic conditions."). A review of the September and November 2017 examination reports underscores this point. Although Plaintiff's gait was good (AR at 609) at the September examination, Plaintiff nonetheless reported chronic back pain, as described above. (AR at 607). And in November, while it is true that Plaintiff's general appearance was described as "in no acute distress, well developed, well nourished," the entire basis for the visit was "severe" lower back pain and discomfort, with Plaintiff rating the pain as a six out of ten. (AR 617). *See Toni D. v. Saul*, No. 3:19-cv-820-SI, 2020 WL 1923161, at *6 (D. Or. Apr. 21, 2020) ("Although an ALJ may consider a claimant presenting in no acute distress in assessing the weight given to a claimant's subjective testimony, an ALJ may not simply cherry-pick evidence to show that a claimant is not disabled; rather, the ALJ must consider the evidence as a whole in arriving at a conclusion based on substantial evidence. . . . The ALJ cherry-picked statements in Plaintiff's medical records that she presented in no acute distress while ignoring statements in those same chart notes describing ongoing, intense back pain."). More broadly, the ALJ failed "to highlight any part of Plaintiff's testimony that is discredited or contradicted by the lack of acute distress in the medical records." *Quiroz v. Comm'r of Soc. Sec. Admin.*, No. CV-16-02728-PHX-DLR, 2017 WL 4250607, at *3 (D. Ariz. Sept. 26, 2017). "It is certainly possible, and courts have found, that a person can suffer disabling chronic pain that never manifests as acute." *Id.* (citing *Dorsett v. Colvin*, No. 16-cv-1101-PHX-DGC, 2017 WL 840694, at *17 (D. Ariz. Mar. 3, 2017); *Petty v. Astrue*, 550 F.Supp.2d 1089, 1099 (D. Ariz. 2008)).

The same issue arises with another of the ALJ's reasons for discounting Plaintiff's symptom testimony—that Plaintiff reported feeling "good overall" during a November 2018 examination. (AR at 33). At that examination, it is true that Plaintiff reported feeling "good overall." (AR at 724). However, as Plaintiff points out, the appointment concerned her gastroesophageal reflux disease ("GERD") and was unrelated to Plaintiff's other medical issues such as her back pain. It is entirely conceivable that Plaintiff's reports of feeling "good overall" were in reference to her GERD, not to her back pain or other

unrelated conditions and symptoms—especially given that Plaintiff's back pain was ongoing throughout this time period.

Defendant argues that this Court should affirm because the ALJ found that Plaintiff's subjective symptom testimony conflicted with the medical opinion evidence. (Doc. 22 at 16–17). The Court is unpersuaded by this argument because it is not clear that the ALJ actually made such a finding. The ALJ's discussion of medical opinion evidence is found at the end of the ALJ's RFC analysis. (AR at 33–34). In three consecutive paragraphs, the ALJ discusses the medical opinions of Dr. Richard Palmer (consultative examiner), Dr. Melvin Roberts (state agency consultant), and Dr. Carol Hutchinson (state agency consultant at the reconsideration level). (*Id.*). Defendant now asserts that these discussions "considered the conflict between the medical opinion evidence and Plaintiff's subjective complaints." (Doc. 22 at 16).

Upon review of the ALJ's discussion of medical opinion evidence, however, this Court finds that the ALJ never explicitly addressed how the medical opinion evidence contradicted or undermined Plaintiff's symptom testimony. Instead, for each of the three medical opinions, the ALJ merely discussed what portions of the opinion he found persuasive—without *any* discussion of or contrast to Plaintiff's own symptom testimony. (AR at 33–34). The ALJ began each paragraph by listing the doctor's findings as to Plaintiff's limitations. (*Id.*). Next, the ALJ characterized those findings as either (i) consistent with or supported by the medical evidence (and therefore persuasive) or (ii) *not* consistent with or supported by the medical evidence (and therefore *not* persuasive). (*Id.*). The medical evidence to which the ALJ compared the opinion testimony was merely the same "cherry-picked" evidence discussed above—that Plaintiff received epidural injections that provided her with 80% relief of her leg pain and that Plaintiff reported feeling "good overall" in November 2018—*or* the general facts that Plaintiff had degenerative disc disease and a limited range of motion. (*Id.*). This analysis of each medical opinion's persuasive value was formulaic, unthorough, and arguably predetermined—the ALJ appeared to have an idea in mind of Plaintiff's limitations, and simply accepted as

- 14 -

persuasive those portions of each medical opinion that aligned with the ALJ's own finding. However, the adequacy of this analysis is not the present issue before this Court. Instead, the ALJ's analysis of the medical opinions is relevant only to the extent that the ALJ used it to show "specific, clear, and convincing reasons" to reject Plaintiff's symptom testimony. And given that the ALJ makes no mention of Plaintiff's symptom testimony at all, this Court cannot find that such testimony can be discounted on the grounds that it conflicted with the medical opinions.[6]

Defendant cites two other reasons that it asserts support the ALJ's decision to discount Plaintiff's symptom testimony; however, these other reasons were not actually set forth by the ALJ. The Court may only affirm the ALJ on grounds that were actually set forth in the ALJ's decision. *See Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (citation omitted). First, Defendant points to instances in the record where it was noted that Plaintiff's gait, muscle tone, musculoskeletal examination, and strength were "normal." (Doc. 22 at 14). Although the ALJ does refer to September and December 2017 examinations in which Plaintiff's gait was noted as "normal," (AR at 33 (citing to AR 609 & 739)), the ALJ does not mention *any* of the other examination findings listed by Defendant. Therefore, the Court cannot affirm the ALJ on the basis of these other examination findings. Second, Defendant argues that evidence of Plaintiff's daily activities was inconsistent with—and therefore discrediting of—her symptom testimony. (Doc. 22 at 17). Plaintiff, of course, disputes this. (Docs. 19 at 13 & 26 at 8–9). However, the ALJ did not refer to Plaintiff's daily activities at all in discounting Plaintiff's symptom testimony in his RFC analysis. Instead, the only reference to daily activities—in the entire ALJ decision—is found in the ALJ's step two analysis, in the context of the fourth area of mental functioning. (AR at 30). It follows that this Court cannot affirm the ALJ on the basis of Plaintiff's daily activities. This Court can only affirm the ALJ's discounting of

---

[6] Because the ALJ failed to meaningfully explain what parts of Plaintiff's symptom testimony were discredited by the medical opinions and why, this Court does not reach Plaintiff's argument that some of the medical opinions were "stale" and did not reflect the most recent medical evidence. (Doc. 26 at 8).

Plaintiff's symptom testimony on grounds that the ALJ based its own decision upon. And as explained above, such grounds were insufficient in the present case. This Court finds that the ALJ erred in discounting Plaintiff's symptom testimony without providing specific, clear, and convincing reasons to do so.

## IV. REMAND FOR FURTHER PROCEEDINGS

This Court finds that the ALJ erred by (i) failing to include Plaintiff's non-severe mental limitations in the RFC analysis and (ii) discounting Plaintiff's symptom testimony without providing specific, clear, and convincing reasons to do so. The Court further finds that these errors were harmful. The only question remaining is whether this case should be remanded for further proceedings or for an award of benefits.

Once a court has determined an ALJ's decision contains harmful error, the decision whether to remand a case for additional evidence or for an award of benefits is within the discretion of the court. *Reddick v. Chater*, 157 F.3d 715, 728 (9th Cir. 1998); *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal [and an award of benefits] is appropriate." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). "Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find claimant disabled if all the evidence were properly evaluated." *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (citing *Vasquez*, 572 F.3d at 593).

Here, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated using the proper standards. Therefore, the Court, in its discretion, finds that a remand for further proceedings is appropriate.

///

///

///

Accordingly,

**IT IS ORDERED** that the December 5, 2019 final decision of the Commissioner of Social Security is **vacated and remanded** to the Commissioner of the Social Security Administration for further proceedings consistent with this order.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly and terminate this action.

Dated this 28th day of February, 2022.

Honorable Steven P. Logan
United States District Judge